UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHERRY L. MASSENGALE, <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN COMPANY and THOMAS MIKRUT, in both his official capacity and his personal capacity, <br><br> Defendants. | CAUSE NO.: 2:19-CV-409-TLS |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF No. 28]. For the reasons set forth below, the Court GRANTS the Defendants' motion.

## PROCEDURAL BACKGROUND

The Plaintiff Sherry L. Massengale filed a Complaint [ECF No. 1] against the Defendants Walgreen Company and Thomas Mikrut, alleging claims of retaliation under Title VII of the 1964 Civil Rights Act (Count I), age discrimination under the Age Discrimination in Employment Act (Count II), intentional infliction of emotional distress against Walgreens (Count III), and intentional infliction of emotional distress against Mr. Mikrut (Count IV). The instant Motion for Summary Judgment is fully briefed and ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's

claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTUAL BACKGROUND[1]

### A.  The Plaintiff's Employment at Walgreens

The Plaintiff began working for Walgreens in 1992 and, except for a short break in the late 1990s, continued to work for the company until she was terminated in September 2018. Def.

---

[1] In their reply, the Defendants argue that their version of the facts should be accepted as true because the Plaintiff failed to comply with (then-current) Northern District of Indiana Local Rule 56-1. Def. Reply 3–4, ECF No. 36. The Court agrees that the Plaintiff's Statement of Genuine Disputes is deficient because it largely argues the merits of her claim, fails to identify which specific facts she disputes, and does not properly cite the record when claiming there is a dispute. *See* N.D. Ind. L.R. 56-1(b)(2) (2019) (requiring a Statement of Genuine Disputes that "identifies the material facts that the party contends are genuinely disputed"); Fed. R. Civ. P. 56(c)(1) (requiring parties to properly support their assertion of a genuine dispute); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (stating that it is not a court's responsibility to "wade through improper denials and legal argument in search of a genuinely disputed fact" (citation omitted)). Given the Plaintiff's failure to properly dispute the facts identified in the Defendants' Statement of Material Facts, the Court accepts those facts as undisputed. *See Carragher v. Ind. Toll Rd. Concession Co.*, 936 F. Supp. 2d 981, 985 n.1 (N.D. Ind. 2013).

Ex. A, 12:21–22, 17:4–21, ECF No. 30-1; Pl. Ex. A, 18:15–19, ECF No. 35-1. During those years, she held a variety of positions, including cashier, beauty adviser, senior beauty advisor, bookkeeper, price administrator, assistant manager, manager in training, executive assistant manager, and store manager. Def. Ex. A, 43:10–17.

The Plaintiff was promoted to store manager in 2015 or 2016. *Id.* at 43:20–23. She initially started that position at a store in Gary, Indiana, but was transferred in 2017 to a store in Merrillville, Indiana, after the Gary store closed. *See id.* at 55:19–25; Pl. Ex. B, 16:25–17:12, ECF No. 35-2. Her responsibilities as store manager included, among other things, maintaining good working relationships with the staff, managing the operation of the store, customer service, and hiring and training team members. Def. Ex. A, 51:17–53:12; *see* Def. Ex. A, Dep. Ex. 10, ECF No. 30-1. She also had a role in disciplining employees through verbal and written warnings and issuing Performance Improvement Plans (PIPs). Def. Ex. A, 49:23–50:23.

As a store manager, the Plaintiff was supervised by district managers (previously known as community leaders), including Oner Trujillo, Phebe Rodgers, and Thomas Mikrut. *Id.* at 44:21–45:6, 61:25–62:8. The Plaintiff never had issues with Mr. Trujillo or Ms. Rodgers while they were her district managers. *Id.* at 62:12–22. As for Mr. Mikrut, the Plaintiff claims he attacked her character, said she was not doing her job, and, in one instance, yelled at her in earshot of other employees. *Id.* at 62:23–64:25. Although these were work-related issues, the Plaintiff thought it was personal because she claims to have been doing her job as she was expected to by the company. *Id.*

**B.     The Plaintiff's Job Performance**

In the fall of 2016, Ms. Rodgers completed an Annual Performance Review for the Plaintiff. *See* Def. Ex. A, Dep. Ex. 12, ECF No. 30-1. Since Ms. Rodgers had only been

supervising the Plaintiff for about three months at that point, she solicited feedback from the Plaintiff's previous manager, Mr. Trujillo. Pl. Ex. B, 25:1–17. Overall, the Plaintiff received a score of 2.9 on a five-point scale, which reflected that she was partially achieving expectations. Def. Ex. A, Dep. Ex. 12, at 14. A score of three and above is understood as a passing score, like an "A" in school, Pl. Ex. B, 28:9–15, while a score less than three is not viewed as a good score, Def. Ex. B, 27:6–11, ECF No. 30-2.

In the review, Ms. Rodgers rated three areas below a score of three for the Plaintiff: her functional competency, people leadership, and strategic leadership. Def. Ex. A, Dep. Ex. 12, at 6–7. The Plaintiff even agreed that she struggled to deal with conflict, the store's morale issues, and holding her team accountable. Def. Ex. A, 91:5–8. But she also explained that morale was low due to corporate-level actions like cutting hours and closing stores. *Id.* at 91:8–20. The Plaintiff ultimately felt the review was unfair because she was being rated for the entire fiscal year but had not been a manager that whole time. Pl. Ex. A, 92:11–24.

In 2017, Walgreens implemented a new across-the-board policy that required all employees receiving less than a three on their annual review to be placed on a PIP. Def. Ex. A, 93:5–20; Pl. Ex. B, 36:8–18. And since the Plaintiff received a 2.9 on her 2016 annual review, she was placed on a PIP. *See* Def. Ex. A, Dep. Ex. 13, ECF No. 30-1. However, the Plaintiff said Ms. Rodgers was treating the PIP as a technicality and that they were not going to perform any of the steps. Def. Ex. A, 93:8–16.

During her 30-day and 60-day follow-ups on the PIP, Ms. Rodgers commented that the Plaintiff had been improving in her performance and needed to continue to achieve her goals. Def. Ex. A, Dep. Ex. 13, at 11, 14. This improvement was also reflected in the Plaintiff's 2017

4

Annual Performance Review, where she received a score of 3.2, which meant she was achieving expectations. *See* Def. Ex. A, Dep. Ex. 14, at 9, ECF No. 30-1.

In February 2018, Mr. Mikrut took over for Ms. Rodgers as the district manager. Def. Ex. A, 45:7–11; Def. Ex. C, ¶ 1, ECF No. 30-3. Shortly after starting as district manager, Mr. Mikrut learned about issues involving the Plaintiff—specifically, hot line complaints and investigations of how the Plaintiff treated her team. Def. Ex. B, 123:14–124:17. As a result of these concerns, Mr. Mikrut issued the Plaintiff a written warning in March 2018. *See* Def. Ex. A, Dep. Ex. 15, ECF No. 30-1. The warning noted that there had been previous conversations between the Plaintiff and Ms. Rodgers and that Ms. Rodgers issued a verbal warning to the Plaintiff about how she spoke to her team. *Id.* at 3. It also stated that "[t]he behavior [the Plaintiff] exhibits in the way she is talking to her team is unprofessional conduct and seems to be an ongoing trend. This behavior is not creating a healthy work environment." *Id.* at 4. The Plaintiff thought this warning was unfair because she had not received previous discipline for her behavior and described the conversations with Ms. Rodgers as "coaching" about body language and tone. *Id.* at 9; Def. Ex. A, 98:24–99:11, 100:3–7. She also believed that the warning was based on a complaint from a "chronic complainer" who had her own job performance issues. Def. Ex. A, 100:3–13, 101:8–24.

About a month later, Mr. Mikrut followed up the written warning with a final written warning. *See* Def. Ex. A, Dep. Ex. 16, ECF No. 30-1. The comments noted that the Plaintiff participated in a yelling incident, wrote a team member up instead of showing compassion and empathy, was not making the effort to change a perception of favoritism, was not spending the time coaching and developing a team member, and had problems building relationships in the store. *Id.* at 3–4. The Plaintiff again believed this warning was unfair, reiterating her concerns

5

about the previous discipline and explaining why she chose to write the team member up. *Id.* at 8; Def. Ex. A, 107:12–108:2.

Over the course of the next few months, Mr. Mikrut learned that the Plaintiff was not supporting the pharmacy and not working to build relationships with the team. Def. Ex. A, Dep. Ex. 17, at 4, ECF No. 30-1. Mr. Mikrut was particularly concerned about the Plaintiff's ability to coach her team, build relationships, and support the pharmacy, which accounted for 80–90% of the business. Def. Ex. B, 116:5–16. Thus, Mr. Mikrut placed the Plaintiff on a PIP in July 2018. *See* Def. Ex. A, Dep. Ex. 17. The PIP set forth several action steps for the Plaintiff, many of which related to working with the pharmacy team. *See id.* at 5–6. The Plaintiff thought this was unfair, claiming that it was retaliation for her decision to place the store's pharmacy manager, Andrew Skripac, on a PIP. Pl. Ex. A, 114:13–21, 115:2–18. With that said, the Plaintiff recognized that she had a broken relationship with Mr. Skripac, and that there was nothing for her to do to repair the situation. Def. Ex. A, 112:14–113:15.

Finally, on September 12, 2018, the Plaintiff's employment was terminated. Def. Ex. A, Dep. Ex. 17, at 15–16. She had a meeting with Mr. Mikrut and Chris Norder, during which Mr. Mikrut explained that he continued to have the same concerns about building relationships and not complying with the PIP. *Id.* at 15. He specifically noted that she was not compliant with three items: (1) the 90-day efficiency indicator, weekly coaching, and keeping next steps in a binder; (2) not spending enough time in the pharmacy; and (3) building rapport with the team. *Id.* at 15; *see id.* at 5. The Plaintiff claims that she completed every step on the PIP. Pl. Ex. A, 114:2–12.

**C.     The Plaintiff's Claim of Discrimination and Retaliation**

On July 5, 2019, the Plaintiff filed a Charge of Discrimination with the EEOC, alleging race, color, and sex discrimination, as well as retaliation. Def. Ex. A, Dep. Ex. 18, ECF No. 30-1.

In the charge, the Plaintiff claims that Mr. Mikrut retaliated against her for placing Mr. Skripac on a PIP. *Id.*; *see* Def. Ex. A, 119:23–24.

As background, when Mr. Skripac first joined the store, the Plaintiff thought he needed some retraining and time to learn the system due to issues at his previous location. Pl. Ex. A, 68:10–69:5, 69:18–70:2. But as time went on, the Plaintiff, in consultation with Ms. Rodgers, began implementing more formal disciplinary measures against Mr. Skripac to address concerns about store performance and attendance. *Id.* at 70:6–17; Pl. Ex. B, 77:10–79:11. The Plaintiff initially issued Mr. Skripac a written warning, but eventually determined that he needed to be placed on a PIP. *See* Def. Ex. A, Dep. Ex. 11, ECF No. 30-1. Mr. Skripac's performance had apparently not improved, and the Plaintiff was concerned about being disciplined if she did not act. *See* Def. Ex. A, 74:12–19; Pl. Ex. A, 191:3–10; Pl. Ex. B, 79:12–15.

Based on this understanding, the Plaintiff prepared a PIP for Mr. Skripac, which was approved by Ms. Rodgers, a human resource generalist, and a pharmacist union attorney. Pl. Ex. B, 80:12–81:13. The PIP identified actions steps for Mr. Skripac, including preparing for and presenting at business performance meetings, holding his team accountable, delivering recognition and coaching cards, and leading team huddles. Def. Ex. A, Dep. Ex. 11, at 13. The Plaintiff met with Mr. Skripac to discuss the PIP on February 15, 2018. *Id.* at 15.

Mr. Skripac then went to Mr. Mikrut—who had recently become the district manager—to address his concerns about the PIP. Def. Ex. B, 87:4–6. Mr. Skripac thought that the PIP was unfair because he was being singled out and held to different standards than other pharmacists. *Id.* at 87:12–20. Mr. Mikrut agreed and was worried about the risk this situation posed to the company. *Id.* at 90:24–91:3, 94:3–9. He was also concerned about the language used in the PIP—namely, "accountability"—because it did not reflect the culture change Walgreens was

7

trying to implement. *Id.* at 91:4–24; Pl. Ex. C, 92:18–24, 103:1–19, ECF No. 35-3. Thus, Mr. Mikrut had Mr. Skripac's PIP removed. Def. Ex. B, 114:4–115:19.

The Plaintiff believes she was terminated in retaliation for her decision to issue a PIP to Mr. Skripac because she had not previously been disciplined and had been placed on a PIP after Mr. Mikrut decided to reverse Mr. Skripac's PIP. Pl. Ex. A, 115:2–18. She testified that Mr. Mikrut "was already ticked off at [her] for giving somebody a PIP that he didn't feel deserved it." Def. Ex. A, 139:22–140:1.

In her Complaint, the Plaintiff also alleged that she was retaliated against for comments she made about Mr. Mikrut during an "Imergen" meeting. *See* Compl. ¶¶ 21–24, 28, ECF No. 1. The Imergen meeting occurred in the summer of 2018 and allowed employees to give private feedback about Mr. Mikrut's performance as a district manager. Def. Ex. A, 129:2–24. The Plaintiff claims she and two other employees made statements about Mr. Mikrut; however, she does not remember what was said. *Id.* at 129:25–130:10, 130:24–132:1. She stated that she does not think any of her feedback related to harassment, discrimination, or retaliation. *Id.* at 132:2–5. Moreover, Mr. Mikrut said that he did not receive feedback about the meeting and was not told anything the Plaintiff or others said about him. Def. Ex. B, 113:20–23; Def. Ex. C, ¶ 5.

## ANALYSIS

The Defendants move for summary judgment on each of the Plaintiff's claims. The Court first addresses the Title VII retaliation claim on the merits before turning to the remaining claims, which the Plaintiff has abandoned.

**A.      Title VII Retaliation**

Under Title VII, an employer is prohibited "from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice." *Lewis v.*

*Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). To survive summary judgment on this claim, the Plaintiff must offer evidence (1) that she engaged in a statutorily protected activity, (2) that she suffered a materially adverse action taken by the employer, and (3) of a causal connection between the two. *Id.* (citing *Lord*, 839 F.3d at 563). The Court will then "evaluate the evidence as a whole to determine if it 'would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 867 (quoting *Ortiz v. Werner Enters.*, 834 F.3d 760, 764–65 (7th Cir. 2016)).

The Plaintiff claims that the Defendants retaliated against her for her decision to issue a PIP to Mr. Skripac.[2] Pl. Resp. 8, ECF No. 35. The Defendants argue that they are entitled to summary judgment because the Plaintiff's issuance of the PIP was not a statutorily protected activity. Def. Br. 13, ECF No. 29. The Court agrees with the Defendants and concludes that summary judgment is appropriate on the Plaintiff's Title VII retaliation claim.

In order to be considered a statutorily protected activity under Title VII, a plaintiff must complain that "discrimination occurred because of sex, race, national origin, or some other protected class." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). It is not enough to simply complain "about some situation at work, no matter how valid the complaint might be." *Id.*

---

[2] To the extent the Plaintiff previously alleged she was retaliated against for comments she made during the Imergen meeting, that basis for her claim has been abandoned since she did not discuss it in her summary judgment brief. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003). Moreover, the Plaintiff testified that her complaints during that meeting were not about harassment, discrimination, or retaliation, thus preventing her from claiming it was a statutorily protected activity. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (stating that complaints about a supervisor's objectionable behavior, without discriminatory animus, is not a protected activity (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997))).

9

(quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016)). Rather, "[a] complaint of discrimination is a protected activity under Title VII only if the discrimination is based on a protected characteristic like race." *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021); *see also McHale v. McDonough*, — F.4th —, 2022 WL 2898926, at *4 (7th Cir. July 22, 2022) ("The charge—whether formal or informal—must be about the discrimination.").

Here, the PIP prepared and issued by the Plaintiff only references problems with Mr. Skripac's job performance overseeing the pharmacy. The PIP contains no suggestion of discrimination or harassment in any form, let alone discrimination or harassment based on a protected characteristic. While it is certainly possible that the Plaintiff was not treated fairly by Mr. Mikrut based on the approval she had for the PIP from her prior supervisor and her overall satisfactory performance as store manager, that does not change this underlying defect. The Plaintiff only raised issues about poor job performance—not discrimination—which is not a type of complaint protected under Title VII. *See Skiba*, 884 F.3d at 718. Thus, the issuance of the PIP cannot serve as the basis for her retaliation claim.

In response, the Plaintiff claims that her activity was protected by Title VII, but she provides no caselaw for that assertion. She generally relies on *Griffin v. Board of Regents of Regency Univs.*, 795 F.2d 1281 (7th Cir. 1986), but that does not help her argument. In *Griffin*, the plaintiff filed an EEOC complaint that claimed sex discrimination, which the plaintiff argued was the basis for her retaliatory termination. *See id.* at 1284, 1293–94. Of course, a formal EEOC charge is a common form of statutorily protected activity that can provide grounds for a retaliation claim. *See Lewis*, 909 F.3d at 867. But the Plaintiff filed her EEOC charge after being terminated and cannot otherwise claim she was retaliated against for filing the charge.

Accordingly, the Plaintiff's retaliation claim fails on the first element. Since the Plaintiff has not shown that she engaged in a statutorily protected activity, the Court need not address the Defendant's arguments about causation. The Defendants are entitled to summary judgment on Count I of the Plaintiff's Complaint.

**B.     Abandoned Claims**

The Defendants also move for summary judgment on the Plaintiff's remaining claims of age discrimination (Count II), intentional infliction of emotional distress against Walgreens (Count III), and intentional infliction of emotional distress against Mr. Mikrut (Count IV). In the Plaintiff's response, she does not address these arguments or defend these claims in any way; thus, she has abandoned her remaining claims. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (concluding that a claim was abandoned when a party failed to defend it "in his district court brief in opposition to summary judgment"). Therefore, the Defendants are entitled to judgment on Counts II, III, and IV of the Plaintiff's Complaint.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment [ECF No. 28]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendants Walgreen Company and Thomas Mikrut and against the Plaintiff Sherry L. Massengale.

SO ORDERED on August 1, 2022.

>                           s/ Theresa L. Springmann
>                           JUDGE THERESA L. SPRINGMANN
>                           UNITED STATES DISTRICT COURT